# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DERRICK PHILLIPS,                )
                                 )
          Plaintiff,             )
                                 )
          v.                     )          1:26CV151
                                 )
HIGH POINT UNIVERSITY,           )
                                 )
          Defendant.             )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's Motion for Preliminary Injunction ("PI Motion") (Docket Entry 9) and his Motion for Limited Expedited Discovery ("Expedited Discovery Motion") (Docket Entry 14). (See Docket Entry dated Apr. 13, 2026 (referring PI Motion and Expedited Discovery Motion).)[1]  Because

---

[1] Plaintiff filed the PI Motion on March 16, 2026 (see Docket Entry 9 at 1 (bearing file-stamp for that date)) and the Expedited Discovery Motion on March 17, 2026 (see Docket Entry 14 at 1 (bearing file-stamp for that date)).  Defendant did not receive service of process until March 20, 2026 (see Docket Entry 17), after which it timely answered (see Docket Entry 18) and gave notice (A) that "Plaintiff served the [PI Motion and Expedited Discovery] Motion[] on counsel for Defendant on April 13, 2026" (Docket Entry 19 at 1; see also Docket Entry 9 (lacking certificate of service); Docket Entry 14 (same)), as well as (B) that "Defendant intend[ed] to file its responses in opposition to [said m]otions within the time periods established by the Court's [L]ocal [R]ules" (Docket Entry 19 at 1).  The undersigned Magistrate Judge therefore deferred consideration of the PI Motion and the Expedited Discovery Motion until Defendant responded to them (see Docket Entries 27, 28) and Plaintiff replied (see Docket Entries 31, 32). As to the form that consideration now will take, by statute, absent consent of the parties, see 28 U.S.C. § 636(c)(1), a magistrate judge may not "determine . . . a motion for injunctive relief," 28
(continued...)

Plaintiff has not shown that he likely will suffer irreparable harm absent entry of the preliminary injunctive relief he has requested and has not proposed any discovery that plausibly would alter the Court's analysis of irreparable harm, the Court will deny the PI Motion and the Expedited Discovery Motion.

<u>INTRODUCTION</u>

Plaintiff commenced this action by filing a Complaint (Docket Entry 2), which he promptly amended as a matter of course by filing a First Amended Complaint ("FAC") (Docket Entry 7). The FAC asserts claims by Plaintiff against Defendant under "Section 504 of the Rehabilitation Act" (<u>id.</u> at 3) and the "Americans with Disabilities Act" (<u>id.</u> at 4). To support those claims, the FAC alleges, in pertinent part, that:

1) "Plaintiff has a documented disability, including Attention-Deficit/Hyperactivity Disorder ('ADHD'), which substantially limits major life activities" (<u>id.</u> at 1);

2) "[b]efore enrolling at [Defendant's] School of Law [in 2025], Plaintiff received testing accommodations at Clemson

---

[1](...continued)
U.S.C. § 636(b)(1)(A), but may "submit . . . recommendations for the disposition, by a [district] judge of the court, of any [such] motion," 28 U.S.C. § 636(b)(1)(B). On consent of the parties (<u>see</u> Docket Entry 34 at 4), Chief United States District Judge Catherine C. Eagles has referred this case to the undersigned Magistrate Judge for all proceedings (<u>see</u> Docket Entry 36 at 1). Accordingly, the undersigned Magistrate Judge will resolve the PI Motion and the Expedited Discovery Motion by order (rather than recommendation).

-2-

University" (id.; see also id. ("Plaintiff also later received accommodations on the LSAT."));

3) "[o]n or about September 23, 2025, Plaintiff formally notified [Defendant's] Office of Accessibility Resources and Services ('OARS') of his disability and requested reasonable accommodations for law-school testing" (id.; see also id. ("Plaintiff submitted medical documentation from his treating provider on September 23, 2025."));

4) "[a]fter submitting his written request and supporting documentation, Plaintiff attempted to complete the OARS intake process" (id.), by "schedul[ing] an intake meeting for a thirty-minute block shortly before class" (id. at 1-2);

5) "[d]uring that meeting, Plaintiff was informed that the intake interview would require approximately one hour to complete" (id. at 2);

6) "[b]ecause Plaintiff had class and could not miss it, the intake process was not completed that day and had to be rescheduled" (id.);

7) "[d]ue to available appointment slots conflicting with Plaintiff's class schedule, the intake process was not completed until November 18, 2025" (id.);

8) "[o]n November 20, 2025, OARS sent Plaintiff a determination letter acknowledging that Plaintiff qualified as an individual with a disability under the ADA[, i.e., the Americans

-3-

with Disabilities Act,] but stating that the documentation on file did not show supporting data sufficient to justify extended [test-taking] time, a distraction-reduced testing environment, or reader assistive technology" (id.; see also id. at 1 (alleging that Plaintiff requested those accommodations, as well as "permission to complete examinations using pen-and-paper"), 2 ("OARS further stated that a psychoeducational evaluation would likely show that information and attached a list of local agencies for additional testing."));

9) that "determination came immediately before Thanksgiving break and less than two weeks before final examinations, leaving Plaintiff no realistic opportunity to obtain a psychoeducational evaluation before finals" (id. at 2);

10) "Plaintiff was therefore required to take multiple high-stakes final examinations without the requested accommodations" (id.);

11) "[a]s a direct and foreseeable result, Plaintiff was able to complete objective portions of certain examinations but was unable to complete substantial essay-based portions that were most affected by time constraints and the absence of his requested accommodations" (id.), culminating in his receipt of final course grades of C+, D+, and D, in Contracts, Civil Procedure, and Torts, respectively (see id. at 2-3); and

-4-

12) "[t]hese academic outcomes resulted in Plaintiff's academic dismissal" (id. at 3).[2]

As relief, the FAC demands, inter alia, "compensatory damages" (id. at 4) and "appropriate declaratory and injunctive relief requiring Defendant to provide Plaintiff meaningful access to its educational program" (id.; see also id. at 3 (alleging that Plaintiff's "dismissal is causing continuing and ongoing harm to [his] legal education, academic record, financial circumstances, and ability to move forward in law school admissions and professional planning," describing "irreparable harm [to Plaintiff as] including delay in his legal education, damage to his academic record, disruption of his ability to continue his legal studies, and harm to his future professional opportunities," and insisting that "[m]onetary damages alone cannot remedy the loss of educational opportunity and the interruption of Plaintiff's legal education")). Of particular salience to the matters presently before the Court, the FAC expressly requests entry of a "preliminary injunction requiring Defendant to immediately reinstate Plaintiff to [its] School of Law with reasonable accommodations pending final resolution of this action[.]" (Id. at

---

[2] Plaintiff did not verify the FAC (see Docket Entry 7 at 1-4), but did later submit three declarations under penalty of perjury that largely align with the FAC's above-quoted factual allegations. (Compare id. at 1-3, with Docket Entry 11 at 1-2, Docket Entry 13 at 1, and Docket Entry 31-1 at 1-2.)

-5-

4; see also id. at 3 ("Immediate injunctive relief, including reinstatement with appropriate accommodations pending the resolution of this case, is necessary to prevent further harm.").)

The PI Motion develops that request by asking the Court (A) to "[o]rder[] Defendant to permit Plaintiff to register and participate in coursework on the same basis as similarly situated students, subject to academic requirements not inconsistent with this Court's order" (Docket Entry 9 at 2), and (B) to "[o]rder[] Defendant to provide . . . effective testing accommodations for future examinations while this case remains pending" (id.). "[I]n the alternative, [the PI Motion proposes that the Court order Defendant] to permit Plaintiff to retake the affected Fall 2025 final examinations in Contracts, Civil Procedure, and Torts with accommodations supported by Plaintiff's medical documentation and prior request, including double-time testing and pen-and-paper testing" (id.), "and to recalculate Plaintiff's academic standing based on those retake results under ordinarily applicable academic standards" (id.). The PI Motion also proffers these additional facts not mentioned in the FAC:

> Plaintiff was dismissed [from Defendant's School of Law] effective January 2, 2026. The dismissal letter states that Plaintiff is no longer eligible to continue in classes and may not petition for reinstatement until nine months after dismissal. The attached handbook excerpt further states that such petitions generally are not granted and must be supported by clear and convincing evidence.

-6-

> After Plaintiff disclosed his academic dismissal to [three other law schools], those schools denied admission. Plaintiff was also informed by telephone by [a fourth law school] that, because of his dismissal, his application had to be withdrawn and he would not be eligible for admission until two years had elapsed. These events have caused ongoing and present harm to Plaintiff's legal education, admissions prospects, academic record, and professional trajectory.

(Id. (internal paragraph numbers omitted);[3] see also id. ("Plaintiff has no adequate remedy at law for the ongoing interruption of his legal education. Money damages cannot restore lost educational opportunity, repair admissions-cycle harm in real time, or eliminate the continuing impact of an active academic dismissal while this action is pending."); Docket Entry 11 at 2 (setting out Plaintiff's averment that he "need[s] relief now because waiting until final judgment will not restore the lost time in [his] legal education or the opportunities [he is] losing while the dismissal [by Defendant] remains active").)

Along with the PI Motion, Plaintiff filed a Memorandum in Support ("PI Brief") (Docket Entry 10) and these documents:

---

[3] Plaintiff did not verify the PI Motion (see Docket Entry 9 at 1-3), but (with it) did file a declaration under penalty of perjury that contains averments generally matching the above-quoted allegations from the PI Motion (except as to the handbook excerpt) (compare id. at 2, with Docket Entry 11 at 2), as well as a copy of the handbook excerpt confirming his account (see Docket Entry 10-1 at 16-17). In addition, Plaintiff filed a Supplement (Docket Entry 12) and a Supplemental Declaration (Docket Entry 13), "to clarify . . . why [he] did not specifically request a pen-and-paper accommodation during the OARS intake interview" (Docket Entry 12 at 1), to wit, "because [he] reasonably believed that examinations could generally be written by hand" (Docket Entry 13 at 1).

-7-

(1) the 2025-26 academic calendar for Defendant's School of Law (Docket Entry 10-1 at 14); (2) Plaintiff's original accommodation request (id. at 2-3, 5); (3) documentation supporting that request (id. at 9-13); (4) an e-mail from OARS transmitting the accommodation denial letter (id. at 6-8); (5) the dismissal letter (id. at 15); (6) the handbook excerpt for academic dismissals (id. at 16-17); and (7) rejection notices Plaintiff received from three other law schools in 2026 (id. at 18-20).  Per that calendar, the "[f]irst day of [the 2025 f]all semester" (id. at 14) fell on "August 18th" (id.), i.e., more than a month before Plaintiff e-mailed OARS on September 23, 2025 (see id. at 2, 5), "request[ing] consideration for the following accommodations" (id. at 5): "1. Extended time on examinations (e.g., time-and-a-half). 2. Reduced-distraction testing environment to minimize external interruptions.  3. Permission to use a laptop with approved software for note-taking and exam writing.  4. Access to lecture recordings or outlines when available, to reinforce comprehension." (Id. (bold font omitted) (underscoring added).)

The documentation Plaintiff submitted to OARS to support that accommodation request consists of a letter from a family nurse practitioner ("FNP") dated September 27, 2023 (see id. at 9), as well as an e-mail from an office at Clemson dated March 13, 2024 (see id. at 10-11; see also id. at 12-13 (letter from Law School Admission Council ("LSAC") dated March 4, 2025, which record does

-8-

not show Plaintiff submitted to OARS)).  The FNP's letter states (A) that Plaintiff "ha[d] been under the care of [the FNP's] office since 09-21-2023" (id. at 9), (B) that Plaintiff had completed an "Adult ADHD Self-Report Assessment Scale" (id.), (C) that Plaintiff "ha[d] expressed difficulty with Generalized Anxiety Disorder, ADHD-combined type" (id. (internal colon and hyphen omitted)), and (D) that the FNP held the "professional opinion that [Plaintiff] does meet the criteria of an academic accommodation" (id.; see also id. ("[Plaintiff] has shown improvement while being under the care of our office . . . .  However, there are still functional limitations . . . .  As such, it is my professional recommendation that [he] be granted fitting accommodations, including but not strictly limited to . . . extended testing time (double time).  Also allow [him] to use pen and paper.")).  The Clemson e-mail approved Plaintiff for "[e]xtended time on exams/tests (1.5x)." (Id. at 10 (bold font omitted).)[4]

After filing the PI Motion, Plaintiff requested and received leave to file a Supplemental Memorandum (Docket Entry 22-1) and additional documents showing his interactions with OARS in the fall

---

[4] The LSAC letter "automatically approved [Plaintiff] to receive the same accommodations on the LSAT that [he] w[as] approved to receive on [his] last registration for the test" (Docket Entry 10-1 at 12), which took the form of "100% [a]dditional [t]est time on multiple choice sections" (id.), as well as use of "paper and pencil [on those sections]" (id. (all-caps font omitted)), and "100% [a]dditional [t]est time for [the a]rgumentative [w]riting [section]" (id. at 13).

-9-

of 2025 (see Docket Entry 22-2). (See First Text Order dated May 8, 2026 ("granting [Plaintiff's] Motion for Leave to File Supplemental Memorandum and Exhibits, and [] accepting [Docket Entries 22-1 and 22-2] for consideration in relation to [PI] Motion").)[5] And – after Defendant responded in opposition to the PI Motion (see Docket Entry 28) – Plaintiff replied (see Docket Entry 31), including therewith a declaration (Docket Entry 31-1), as well as various documents (some of which he previously had filed) (see Docket Entry 31-2 at 1 (describing Docket Entries 31-3, 31-4, 31-5, and 31-6)). Those materials establish this time-line:

1) fall semester classes at Defendant's School of Law began on August 18, 2025 (see Docket Entry 31-3 at 2; accord Docket Entry 10-1 at 14);

2) more than a month later, "[o]n or about September 23, 2025, [Plaintiff] submitted [his] accommodation request and supporting medical documentation to OARS" (Docket Entry 31-1 at 1);

---

[5] Plaintiff also requested and received permission to file a revised, proposed order as to the PI Motion. (See Second Text Order dated May 8, 2026 ("granting [Plaintiff's] Motion for Leave to File Revised Proposed Order, and [] accepting [Plaintiff's] Revised Proposed Order for consideration in relation to [PI] Motion").) The Revised Proposed Order essentially tracks the PI Motion's alternative relief proposal, by requiring Defendant first (A) to permit Plaintiff to retake his final examinations from the 2025 fall semester with accommodations, and then (B) to reassess his dismissal based on the results of those (retaken) examinations (rather than simply requiring his immediate reinstatement). (Compare Docket Entry 9 at 2, with Docket Entry 26-1 at 1.)

-10-

3) Plaintiff then "request[ed ] an [intake] appointment with [OARS] at 9:00 am on October 01, 2025" (Docket Entry 22-2 at 2), which, via email dated September 30, 2025, OARS "approved" (id.);

4) "[Plaintiff] attended [that] intake-related meeting with OARS on or about October 1, 2025" (Docket Entry 31-1 at 1), whereupon he learned "that the intake process would take longer than thirty minutes" (id.);

5) "[b]ecause the intake would take longer than the time available before [Plaintiff's next] class, the full intake process was not completed during the October 1 meeting" (id.);

6) more than a month later, "[o]n or about November 4, 2025, [Plaintiff] requested or attempted to schedule a meeting with OARS" (id.); more specifically, as evidenced by a response e-mail an Assistant Director of OARS "[s]ent[ to Plaintiff on] November 4, 2025 [at] 8:16:27 AM" (Docket Entry 31-5 at 8 (bold font omitted)), at some time early in the morning on November 4, 2025, Plaintiff "request[ed] to meet" (id.) with OARS that day at "9:00am" (id.);

7) that response e-mail (A) states that the Assistant Director's "schedule conflict[ed] with 9:00am, but [that she was] free after 10:00 and most of the afternoon" (id.), and (B) asks if "there [was] another time [Plaintiff was] available" (id.);

8) as evidenced by another e-mail to Plaintiff from OARS on November 4, 2025, Plaintiff did not pursue a meeting at some other time that day, but instead "request[ed ] an appointment with [OARS]

-11-

at 9:00 am on November 06, 2025, [which was] declined" (Docket Entry 22-2 at 3), with a directive for Plaintiff to "[p]lease contact OARS to reschedule [his] appointment" (id.);

9) nine days thereafter, via e-mail "[s]ent[ on] Thursday, November 13, 2025 [at] 8:14:16 AM" (Docket Entry 31-5 at 2 (bold font omitted)), Plaintiff asked the Assistant Director if she was "available next week" (id.), before immediately sending a second e-mail asking if she "could [] meet on zoom tomorrow" (id.);

10) within seven minutes, the Assistant Director responded that, "[w]hile in person is preferred for initial meetings, [she] c[ould] also do a virtual meeting tomorrow between 9:30 and 11:00 or between 2:30 and 4:00" (id. at 3);

11) later that morning, (A) Plaintiff replied by asking if the Assistant Director could "do Tuesday at 8am" (id. at 4), (B) she promptly rejoined that she "ha[d] something until 8:30" (id. at 7), but that she could meet at "8:30 or 9:00" (id.), and (C) Plaintiff stated "8:30 will work" (id.) "[o]n Tuesday" (id.; see also Docket Entry 22-2 at 4 (stating, in e-mail sent by OARS to Plaintiff on November 13, 2025, that his "request for an appointment . . . at 8:30 am on November 18, 2025 ha[d] been approved"));

12) "the full intake meeting occurred on or about November 18, 2025" (Docket Entry 31-1 at 2);

13) "[o]n or about November 20, 2025, [OARS] issued its accommodation determination" (id.; see also Docket Entry 31-4 at 2-

-12-

4 (additional copy of e-mail from OARS transmitting accommodation denial letter, "[s]ent[ to Plaintiff on] Thursday, November 20, 2025 [at] 9:30:59 AM" (bold font omitted))); and

14) fall semester classes at Defendant's School of Law ended on November 21, 2025 (see Docket Entry 31-3 at 2; accord Docket Entry 10-1 at 14), with the next week comprised of two "[r]eading [d]ays" (Docket Entry 31-3 at 2; accord Docket Entry 10-1 at 14) and a break for the "Thanksgiving Holiday" (Docket Entry 31-3 at 2; accord Docket Entry 10-1 at 14), followed by two weeks for "[f]inal [e]xams" (Docket Entry 31-3 at 2; accord Docket Entry 10-1 at 14).

Turning to the contents of the accommodation denial letter, OARS first addressed Plaintiff's request for a "[d]istraction-[r]educed [t]esting [e]nvironment" (Docket Entry 10-1 at 7 (bold font omitted)):

> Using [your] earplugs for your last test allowed you to tune out distractions, and[,] as a result, you were able to get more accomplished. We highly encourage you to continue using the earplugs as well as positioning yourself strategically in the classroom (e.g., at the front or back, facing the wall) for future tests. These steps are expected to mitigate the need for [a] separate testing environment.

(Id. (stray comma omitted).) "Additionally, [OARS explained] that the documentation [it] ha[d] on hand d[id] not show supporting data indicating a substantial limitation that would justify extended time or reader assistive technology for tests at th[at] time." (Id.; see also id. (reminding Plaintiff of "discuss[ion] in the

-13-

intake meeting" of "psychoeducational evaluation [as means that] would likely show this information" and "attaching a list of local agencies which [could] give [Plaintiff] guidance on next steps").)

The accommodation denial letter then advises Plaintiff that, if he "disagree[d] with the [denial of] identified accommodations" (id.), "OARS provides a process for prompt review and resolution" (id.; see also id. at 7-8 (describing option to "file an appeal through the ADA/504 Appeal Process" by sending an "email . . . within ten (10) working days of receiving the [accommodation denial] letter," after which "[t]he 504 Coordinator will be in contact with [Plaintiff] within seven (7) working days" and "will make a final decision on the appeal and will provide [Plaintiff] with a written decision via [] email within five (5) working days of communicating with [Plaintiff]" (bold font omitted))). Lastly, the accommodation denial letter notes that Plaintiff "may also file a complaint with the U.S. Department of Education's Office of Civil Rights at any time before, during, or after [Defendant's] 504 grievance process." (Id. at 8 (hyper-linking omitted).)

As a final matter (as articulated in the Expedited Discovery Motion's supporting brief (Docket Entry 15)), Plaintiff has "request[ed] leave to serve a short set of requests for production, and [to take] a limited [Federal] Rule [of Civil Procedure] 30(b)(6) deposition or [to obtain a] declaration [as an] alternative, confined to the following categories" (id. at 1):

-14-

1. Plaintiff's examination records for the Fall 2025 Contracts, Civil Procedure, and Torts final examinations, including answer files, upload records, completion records, and any documents showing whether portions were left incomplete;

2. Documents sufficient to show the grading structure, point allocation, or rubric for the Fall 2025 Contracts, Civil Procedure, and Torts final examinations;

3. Documents sufficient to show when and how the Torts examination format requirement was communicated, including whether the examination was required to be typed and whether pen-and-paper or blue books were prohibited;

4. Plaintiff's OARS file, including intake notes, determination materials, internal communications, and documents reflecting the handling of Plaintiff's accommodation request;

5. Documents sufficient to show whether any interim or partial testing accommodations were considered for Plaintiff before finals;

6. To the extent such materials exist and can be produced in anonymized or otherwise lawful form, documents sufficient to show whether Defendant provided other law students with interim testing-format or location adjustments during the same term.

(Id. at 2.)  Defendant has responded in opposition to the Expedited Discovery Motion (see Docket Entry 27), and Plaintiff has replied (see Docket Entry 32).

## DISCUSSION

"A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit."  Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) (emphasis added).  As such, a preliminary

-15-

injunction "should only be granted in limited circumstances." <u>Bach v. Law School Admission Council, Inc.</u>, No. 1:13CV888, 2014 WL 12987279, at \*1 (M.D.N.C. Feb. 4, 2014) (unpublished) (Eagles, J.). "Because mandatory – rather than prohibitory – preliminary injunctions generally do not preserve the status quo, they are granted even more sparingly." <u>Id.</u> (citing <u>Pashby v. Delia</u>, 709 F.3d 307, 319 (4th Cir. 2013)). As documented in the Introduction, the PI Motion (even if limited only to the alternative relief requested therein) seeks mandatory (not prohibitory) injunctive relief against Defendant that would alter (not preserve) the status quo. "The [C]ourt will only grant a mandatory preliminary injunction if it is necessary both to protect against <u>irreparable harm</u> in a deteriorating circumstance <u>created by the defendant</u> and to preserve the [C]ourt's ability to enter ultimate relief on the merits of the same kind." <u>Id.</u> (emphasis added) (internal quotation marks omitted). For the reasons that follow, the record (detailed in the Introduction) establishes no such necessity in this case.

En route to that conclusion, the Court notes that "[a] plaintiff seeking a preliminary injunction <u>must demonstrate</u> 'that he is <u>likely to succeed on the merits</u>, that he is <u>likely to suffer irreparable harm</u> in the absence of preliminary relief, that the <u>balance of equities tips in his favor</u>, <u>and</u> that an <u>injunction is in the public interest</u>.'" <u>Di Biase</u>, 872 F.3d at 230 (emphasis added) (quoting <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 20

-16-

(2008)).  Significantly, "*Winter* made clear that *each* of these four factors must be satisfied to obtain preliminary injunctive relief." Henderson v. Bluefield Hosp. Co., LLC, 902 F.3d 432, 439 (4th Cir. 2018) (emphasis in original).  "And, even more relevant to the [resolution of the PI Motion], the [Winter] Court indicated that it was unnecessary to address all four factors when one or more had not been satisfied."  Id.  In other words, "[g]ranting a preliminary injunction requires analysis of each *Winter* factor," Frazier v. Prince George's Cnty., 86 F.4th 537, 544 (4th Cir. 2023), but "*denying* a preliminary injunction only takes the rejection of a single factor," id. (emphasis in original); see also Henderson, 902 F.3d at 439 ("In light of *Winter*, the [] argument that district courts must consider all four factors and their impact upon one another before denying preliminary injunctive relief is clearly misplaced." (internal quotation marks omitted)).

Here, the Court will deny the PI Motion because Plaintiff has not satisfied the second Winter factor, i.e., he has not shown that "he is likely to suffer irreparable harm in the absence of preliminary relief," Di Biase, 872 F.3d at 230 (emphasis added) (internal quotation marks omitted).[6]  Importantly:

---

[6] Although second in Winter's list of factors, the irreparable harm factor addresses a matter of primary concern in this context, as the United States Supreme Court long ago "stated that 'the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies,'" Sampson v.
(continued...)

-17-

> [P]laintiff must demonstrate <u>more than just a possibility</u> of irreparable harm. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the <u>Winter</u> Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a <u>clear showing</u> that the plaintiff is entitled to [such] relief." "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [preliminary injunctive relief] are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date weighs heavily against a claim of irreparable harm."

<u>Id.</u> (emphasis added) (internal citation, ellipsis, and some quotation marks omitted) (first quoting <u>Winter</u>, 555 U.S. at 22; and then quoting <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974)).

The PI Brief presents this argument for the Court to find that "Plaintiff has shown likely irreparable harm absent relief" (Docket Entry 10 at 3 (all-caps, bold, and enlarged font omitted)):

> The dismissal letter itself establishes present and continuing harm. Plaintiff is no longer eligible to continue in classes, his spring tuition and aid were canceled, and he may not petition for reinstatement until at least nine months after dismissal. The attached handbook excerpt goes further and states that reinstatement petitions generally are not granted. That internal process is therefore not a timely or adequate remedy for a student seeking to preserve a current admissions cycle and prevent ongoing interruption of legal education.
>
> Plaintiff has already received admissions denials from [three law schools] after disclosing his academic dismissal. Plaintiff was also informed by telephone by [a fourth law school] that, because of the dismissal, his

---

[6](...continued)
<u>Murray</u>, 415 U.S. 61, 88 (1974) (internal bracket omitted) (quoting <u>Beacon Theatres, Inc. v. Westover</u>, 359 U.S. 500, 506-07 (1959)).

-18-

application had to be withdrawn and he would not be eligible for admission until two years had elapsed. Those admissions consequences support irreparable harm by showing real-time damage to admissions prospects and educational continuity. The active dismissal itself is causing delay in Plaintiff's legal education and continuing harm to his academic record and professional trajectory. Monetary damages alone cannot fully repair the lost opportunity to remain on track in law school or the real-time effect of an active dismissal during ongoing admissions cycles.

(Id.; see also Docket Entry 22-1 at 3 ("Without preliminary relief, Plaintiff remains dismissed and unable to continue Plaintiff's legal education while the accommodation dispute remains unresolved. Plaintiff therefore contends that the interruption to Plaintiff's legal education and professional trajectory constitutes irreparable harm.").) After a thorough review of the record, the Court has determined, as Defendant has argued in response to the PI Motion, that "none of Plaintiff's alleged harms are actually irreparable" (Docket Entry 28 at 9).

For example, "[i]f Plaintiff is successful in his suit, the Court may order [Defendant] to readmit him, in which case his lost educational opportunity harm will be remedied." (Id. (internal quotation marks omitted).) Plaintiff's "readmission will also mean that his admissions-cycle harm will have been remedied because he will be back in school at [Defendant's School of Law] and hence need not participate in any admission-cycle at all." (Id. (internal quotation marks omitted).) "Finally, his readmission will also eliminate the impact of an active academic dismissal

-19-

because Plaintiff will no longer be academically dismissed." (<u>Id.</u> (internal quotation marks omitted).)[7]

Defendant's position on this front finds support in numerous decisions from courts around the country confronted with similar scenarios. <u>See, e.g.</u>, <u>Howell v. Pepperdine Univ.</u>, No. 2:24CV6332, 2025 WL 819593, at *1 (C.D. Cal. Jan. 15, 2025) (unpublished) ("[The p]laintiff has not demonstrated that her cause will be irreparably prejudiced . . . . Simply put, [the p]laintiff's missing law school classes is not irreparable harm."); <u>Daniels v. University of Notre Dame</u>, No. 1:22CV698, 2024 WL 413828, at *2 (N.D. Ind. Feb. 5, 2024) (unpublished) ("[The plaintiff] predicates his claim of irreparable harm on the interruption of his education and the stigma of his record reflecting an involuntary dismissal. That gap in [his] education has already occurred and cannot be precluded by the injunction he requests. In such circumstances, many courts have held that an educational gap does not constitute

---

[7] Defendant also correctly "noted that it is unclear that Plaintiff's applications to other law schools are being denied because of his dismissal from [Defendant's] law school." (Docket Entry 28 at 9; <u>see also</u> <u>id.</u> at 9-10 ("A review of Plaintiff's provided denial letters reveals that none of those denial letters reflect that he is being denied because of his dismissal. [One] denial letter explicitly suggests that Plaintiff was denied admission because of a low LSAT score, not his dismissal . . . ." (internal citation omitted) (citing Docket Entry 10-1 at 18-20)).) In reply, Plaintiff neither contested that point nor meaningfully challenged Defendant's above-quoted contentions about the adequacy of final injunctive relief rescinding Plaintiff's dismissal as a remedy for the harms identified in the PI Brief. (<u>See</u> Docket Entry 31 at 5-6 (discussing irreparable harm).)

-20-

irreparable harm.  As these and other courts have concluded, if a student ultimately prevails in a challenge to expulsion, the interruption in his education can be remedied by money damages. Any speculation about lasting damage to [the plaintiff's] reputation or career prospects is too speculative to satisfy the irreparable harm requirement." (internal citations and quotation marks omitted) (collecting cases)); Garfield v. Middle Tenn. State Univ., No. 3:21CV613, 2021 WL 9979155, at *2 (M.D. Tenn. Sept. 1, 2021) (unpublished) ("[The p]laintiff argues that, should the [c]ourt not intervene, she will be unable to progress in the program with her classmates and that she will forever lose this learning experience.  The [c]ourt finds that [the p]laintiff has failed to demonstrate that she will suffer irreparable harm absent the  injunction. . . .   [C]ourts  have  regularly  found  that interruptions or delays of educational programs are not irreparable harm." (internal citation and quotation marks omitted) (collecting cases)); Doe v. Trustees of Ind. Univ., No. 1:20CV2006, 2020 WL 7028030, at *3 (S.D. Ind. Nov. 30, 2020) (unpublished) ("While expulsion  from  medical  school  is  serious  and  perhaps  even devastating for an individual aspiring to become a doctor, it is unclear how that fact . . . show[s] irreparable harm here because [the  plaintiff]  has  an  opportunity  to  complete  his  medical education at [the defendant's medical school] should he win on the merits  in  this  case."); Oser  v.  Capital  Univ.  Law  Sch., No.

-21-

2:09CV709, 2009 WL 2913919, at *11 (S.D. Ohio Sept. 8, 2009) (unpublished) ("[I]f the [c]ourt were ultimately to find that [the defendant] had failed reasonably to accommodate [the plaintiff], [the court] could then order [the defendant] to readmit [the plaintiff] so that he could complete his legal education.  Any delay in his degree conferral, as well as his pain and suffering in the interim[,] could be adequately compensated by monetary damages. Therefore, [the plaintiff] has not established a substantial likelihood that he will suffer irreparable harm."); Baer v. National Bd. of Med. Exam'rs, 392 F. Supp. 2d 42, 49 (D. Mass. 2005) ("[The plaintiff's] inability to continue as a medical student without interruption at [her medical school], while desirable, is not a harm that is irreparable to [her] potential medical career."); see also Bach, 2014 WL 12987279, at *3 ("[S]hould [the plaintiff] succeed on the merits, he will be able to take another exam with the requested accommodations.  Though a later test may not allow him to enter law school in the fall of this year, . . . delayed entry to law school is not the kind of harm that warrants mandatory injunctive relief.").

In the face of Defendant's arguments, which (like the foregoing rulings) undermine the PI Motion's contentions about irreparable harm, Plaintiff's reply recasts "[t]he harm [at issue a]s the loss of a specific academic opportunity to demonstrate performance on Fall 2025 final examinations under lawful testing

-22-

conditions when those examinations determined academic standing." (Docket Entry 31 at 5.) Per Plaintiff: "That opportunity cannot be fully recreated later. Academic sequencing, access to course materials, preparation posture, exam conditions, grading context, transcript consequences, and academic-standing decisions continue moving while litigation proceeds. A later merits judgment cannot perfectly restore the same exam opportunity." (Id.) Plaintiff, however, has not provided any evidence (or even argument) showing that a court order issued now requiring Defendant to permit Plaintiff to retake his fall 2025 final examinations in Contracts, Civil Procedure, and Torts with accommodations would "perfectly restore the same exam opportunity" (id.), but an identical court order issued at the end of this case would not. (See id.)

Under these circumstances, the Court concludes that "Plaintiff's allegations of irreparable harm are vague, conclusory, and unsupported by the specific demonstrations of fact necessary to obtain preliminary injunctive relief." Martin v. Birkhead, No. 1:24CV165, 2025 WL 2325087, at *10 (M.D.N.C. Feb. 25, 2025) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Mar. 28, 2025) (Biggs, S.J.); see also Williams Ohio Valley Midstream, LLC v. Kittle, No. 23-2185, 2024 WL 3325532, at *5 (4th Cir. July 8, 2024) (unpublished) (reversing preliminary injunction due to district court's "adopt[ion of the plaintiff's] assertions of irreparable harm that [we]re speculative and

-23-

unsupported by evidence"); <u>EZ-Ink, Inc. v. Brother Indus., Ltd.,</u> No. 2:21CV564, 2021 WL 7909312, at *9 (E.D. Va. Dec. 9, 2021) (unpublished) ("The party [seeking a preliminary injunction] must show the likelihood of irreparable harm with concrete evidence. Speculations or conclusory statements concerning alleged harm(s) will not satisfy the irreparable harm requirement." (internal citation omitted)). "Furthermore, to the extent Plaintiff is relying on [the FAC] and [his other] filings . . ., they do not clearly show that he will suffer irreparable harm in the absence of preliminary relief. At most, Plaintiff is speculating as to future injury." <u>Martin</u>, 2025 WL 2325087, at *10 (internal citation omitted). "Similarly, Plaintiff's conclusory assertion regarding the inadequacy of other remedies is patently inadequate to meet Plaintiff's burden." <u>Smith v. Charleston Police Dep't</u>, No. 2:25CV131, 2025 WL 2304945, at *5 (S.D. W. Va. July 14, 2025) (unpublished), <u>recommendation adopted</u>, 2025 WL 2301380 (S.D. W. Va. Aug. 8, 2025) (unpublished).

"Moreover, any deteriorating circumstance surrounding [the] delay[ in Plaintiff taking these examinations with accommodations] was created in large part by [Plaintiff], not [Defendant]." <u>Bach</u>, 2014 WL 12987279, at *3 (internal quotation marks omitted). That consideration further supports denial of the PI Motion because, in addressing the irreparable harm factor, the Fourth Circuit has held that "a preliminary injunction is not warranted where, as here, the

-24-

moving parties have not shown that they availed themselves of opportunities to avoid the injuries of which they now complain." Di Biase, 872 F.3d at 235.  Along that same line, the Fourth Circuit (like many other courts) have acknowledged that "some forms of 'self-inflicted' harm may be discounted or ignored altogether in the preliminary-injunction analysis."  Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell, 915 F.3d 197, 219 (4th Cir. 2019); see also, e.g., Second City Music, Inc. v. City of Chicago, 333 F.3d 846, 850 (7th Cir. 2003) ("[S]elf-inflicted wounds are not irreparable injury."); Moore v. Williamsburg Reg'l Hosp., C.A. No. 4:05-2940, 2006 WL 8438614, at *4 (D.S.C. Aug. 21, 2006) (unpublished) ("A preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted.").

In particular (as argued by Defendant and as shown by record evidence recounted in the Introduction), "any 'irreparable harm' Plaintiff is allegedly facing is, in no small part, of Plaintiff's own making.  Plaintiff failed to timely engage in the disability accommodations request process with OARS, instead waiting until shortly before his final examinations to meaningfully participate in that process."  (Docket Entry 28 at 8.)  As such, "Plaintiff failed to take reasonable steps to avoid the harm he now comes to the Court claiming is irreparable."  (Id. at 9.)  To recap:

-25-

1) classes in the fall of 2025 at Defendant's School of Law started on Monday, August 18, 2025, and ended 13 weeks later on Friday, November 21, 2025 (<u>see</u> Docket Entry 10-1 at 14);

2) Plaintiff waited until Tuesday, September 23, 2025, i.e., more than five weeks into the semester, to request disability accommodations (<u>see</u> <u>id.</u> at 2-3, 5; Docket Entry 11 at 1; Docket Entry 31-1 at 1), in the form of "[e]xtended time on examinations (e.g., time-and-a-half)" (Docket Entry 10-1 at 5 (bold font omitted)), "[r]educed-distraction testing environment" (<u>id.</u> (bold font omitted)), "[p]ermission to use a laptop with approved software for note-taking and exam writing" (<u>id.</u> (bold font omitted)), and "[a]ccess to lecture recordings or outlines when available" (<u>id.</u> (bold font omitted));

3) the only medical documentation Plaintiff submitted to support those requests consisted of a nearly two-year-old letter (<u>see</u> <u>id.</u> at 9), with recommendations for "extended testing time (double time)" and "use [of] pen and paper" (<u>id.</u>), from an FNP whose office (at the time of the letter's writing) had treated Plaintiff for less than a week (<u>see</u> <u>id.</u>), during which period he completed an "Adult ADHD Self-Report Assessment Scale" (<u>id.</u>), "expressed difficulty with[] Generalized Anxiety Disorder, ADHD-combined type" (<u>id.</u> (hypen used for bulleting omitted)), and "show[ed] improvement" (<u>id.</u>; <u>see also</u> <u>id.</u> at 1 (describing FNP's letter as "[t]reating-provider accommodation letter and supporting

-26-

medical documentation submitted to [Defendant]"), 10-13 (attaching e-mail from Clemson's accessibility services office dated March 13, 2024, approving Plaintiff for "[e]xtended time on exams/tests (1.5x)," and letter from LSAC dated March 4, 2025, extending prior approval of double test-time for multiple-choice and essay portions of exam, as well as use of paper and pencil for multiple-choice portion, neither of which describes basis/support for accommodations (bold font omitted)));

4) in conjunction with the foregoing accommodations request, Plaintiff "request[ed ] an [intake] appointment with [OARS] at 9:00 am on October 01, 2025" (Docket Entry 22-2 at 2), which, via email dated September 30, 2025, OARS "approved" (id.);

5) "[Plaintiff] attended [that] intake-related meeting with OARS on or about October 1, 2025" (Docket Entry 31-1 at 1), whereupon he learned "that the intake process would take longer than thirty minutes" (id.);

6) "[b]ecause the intake would take longer than the time available before [Plaintiff's next] class, the full intake process was not completed during the October 1 meeting" (id.);

7) five weeks later, on November 4, 2025, with only 17 days left until classes ended for the semester, "[Plaintiff] requested or attempted to schedule a meeting with [an Assistant Director of] OARS" (id.), for 9:00 a.m. that day (see Docket Entry 31-5 at 8);

-27-

8) the Assistant Director promptly responded that her "schedule conflict[ed] with 9:00am, but [that she was] free after 10:00 and most of the afternoon" (id.), and asked if "there [was] another time [Plaintiff was] available" (id.);

9) Plaintiff did not pursue a meeting at some other time that day, but instead "request[ed ] an appointment with [OARS] at 9:00 am on November 06, 2025[, which was] declined" (Docket Entry 22-2 at 3), with a directive for Plaintiff to "[p]lease contact OARS to reschedule [his] appointment" (id.);

10) more than a week later (and now only eight days before classes ended for the semester), via e-mails "[s]ent[ early on] Thursday, November 13, 2025" (Docket Entry 31-5 at 2 (bold font omitted)), Plaintiff asked the Assistant Director for her "availab[ility] next week" (id.) or "on zoom tomorrow" (id.);

11) the Assistant Director immediately responded that, "[w]hile in person is preferred for initial meetings, [she] c[ould] also do a virtual meeting tomorrow between 9:30 and 11:00 or between 2:30 and 4:00" (id. at 3);

12) later that morning, Plaintiff asked if the Assistant Director could meet on November 18, 2025, i.e., the following "Tuesday at 8am" (id. at 4), and they agreed to meet at 8:30 a.m. on November 18, 2025 (see id. at 7), at which time "the full intake meeting occurred" (Docket Entry 31-1 at 2);

-28-

13) two days later, on the morning of November 20, 2026, "[OARS] issued its accommodation determination" (id.; see also Docket Entry 10-1 at 6-8 (e-mail from OARS to Plaintiff "[s]ent[ on] Thursday, November 20, 2025 [at] 9:30:59 AM" transmitting accommodation denial letter));

14) the accommodation denial letter (A) details the alternative solutions Plaintiff could employ "to mitigate the need for [a] separate testing environment" (id. at 7), (B) explains "that the documentation [OARS] ha[d] on hand does not show supporting data indicating a substantial limitation that would justify extended time or reader assistive technology for tests at th[at] time" (id.), (C) identifies a psychoeducational evaluation as a potential means for Plaintiff to obtain such data (see id.), and (D) advises Plaintiff of his options for internal appeal and external administrative complaint (see id. at 7-8);

15) beginning on Monday, November 24, 2025, Defendant's School of Law held two "[r]eading [d]ays" (id. at 14), before taking the remainder of that week off for the "Thanksgiving Holiday" (id.), and then resuming with two weeks of "[f]inal [e]xams" (id.), from Monday, December 1, 2025, through December 12, 2025 (see id.);[8]

---

[8] Plaintiff devoted a substantial part of his reply in support of the PI Motion to arguments that, due to the constraints of the academic calendar, he could not obtain a psychoeducational evaluation and/or complete the appeal process in time to secure accommodations for his final examinations. (See Docket Entry 31 at (continued...)

16) Plaintiff took his Contracts, Civil Procedure, and Torts final examinations without accommodations and earned final grades in those courses of C+, D+, and D, respectively (see Docket Entry 11 at 1-2; Docket Entry 13 at 1);

17) by e-mailed letter dated January 2, 2026, Defendant "inform[ed Plaintiff] that [his] cumulative grade point average for the fall 2025 semester [wa]s below the [level] needed in order for [him] to remain in good academic standing" (Docket Entry 10-1 at 15) and that he "therefore [was] dismissed" (id.); and

---

[8](...continued) 2-4.) In doing so, Plaintiff argued that "Defendant identifie[d] no mechanism by which that [time] sequence could produce a psychoeducational evaluation, institutional review, completed appeal, final decision, and implemented exam accommodations before December 1." (Id. at 3; see also id. ("The appeal process was illusory on its face for imminent final-exam access because, as written, it used sequential working-day intervals, included an investigation step of uncertain duration, and contained no emergency deadline requiring completion before final examinations.").) This argument not only ignores Plaintiff's responsibility for creating the time-crunch but also improperly places the burden on Defendant to show that Plaintiff could have made meaningful use of the options identified in the accommodation denial letter on November 20, 2025, when – as the party seeking extraordinary relief – Plaintiff bears the burden of showing that he lacked viable options. And Plaintiff has not carried that burden, as (A) he has not shown that he made any effort to schedule a psychoeducational evaluation at that time, (B) he has not cited any evidence to support the inference that OARS would have taken the maximum amount of time allowed under its policy to resolve any appeal, and (C) he has not even disclosed when, within the two-week, final-examination period ending on December 12, 2025, he took the examinations at issue. (See id.) In sum, the Court rejects Plaintiff's characterization of the options presented in the accommodation denial letter as "unavailable remed[ies that] bec[a]me a basis for blaming Plaintiff" (id. at 4).

-30-

18) Plaintiff commenced this action on February 9, 2026 (see Docket Entry 2 at 1), filed the PI Motion on March 16, 2026 (see Docket Entry 9 at 1), supplemented the PI Motion on April 15, 2026 (see Docket Entry 22 at 1), revised his injunctive relief request on May 4, 2026 (see Docket Entry 26 at 1), and reported, in conjunction with his reply filed on May 6, 2026 (see Docket Entry 31 at 1), that he "ha[s] scheduled a psychoeducational evaluation for June 22, 2026" (Docket Entry 31-1 at 3).[9]

The foregoing facts show (A) that Plaintiff initially delayed until more than five weeks of the 13 weeks of classes in the fall 2025 semester had passed before he requested accommodations, (B) that, with said request, Plaintiff included as medical documentation only a dated letter based on minimal interaction with no supporting data regarding the severity of his disability or the basis for the endorsed accommodations (which did not include a distraction-free test environment, as Plaintiff requested, but did

---

[9] "Federal Rule of Civil Procedure 52(a)(2) requires that, when 'granting or refusing' a preliminary injunction, a district court 'state the findings of fact and conclusions of law that support its action.'" Frazier, 86 F.4th at 544 (internal brackets omitted) (quoting Fed. R. Civ. P. 52(a)(2)); see also id. ("[Federal] Rule [of Civil Procedure] 52(a)(2)'s burden is not Herculean. It does not require a tome that memorializes all factual minutiae or responds to every legal assertion."). The 18-item list above states the Court's findings of fact for resolution of the PI Motion and the analysis in this Discussion section constitutes the Court's corresponding conclusions of law. See id. ("[A] district court denying a preliminary injunction may satisfy [Federal] Rule [of Civil Procedure] 52(a)(2) by stating the facts and legal conclusions about a single [Winter] factor.").

-31-

include use of pen and paper for tests, whereas Plaintiff asked for computerized test-taking), (C) that Plaintiff scheduled an accommodation intake meeting another week into the semester and allotted only 30 minutes for that meeting when the intake process required an hour, (D) that Plaintiff next delayed for another five weeks before trying to reschedule the intake meeting and proposed only two times on two dates despite offers of wide, immediate availability from OARS, (E) that Plaintiff thereafter delayed for more than another week before soliciting dates during the last week of classes for the intake meeting, (F) that OARS issued its accommodation denial letter within 48 hours of Plaintiff finally completing the intake process, noting specific deficiencies in his support materials and providing information about avenues he could pursue if he disputed that result, and (G) that, having eschewed those options and fallen short of achieving the grades needed to avoid dismissal, Plaintiff waited for more than a month after his dismissal to file suit, delayed for more than another month to move for preliminary injunctive relief, and then spent another month and a half fine-tuning his relief request and scheduling an evaluation he had known he needed for six months.

Given that course of conduct, "the Court finds [that Plaintiff's] purported need for emergency relief is substantially, if not entirely, the result of poor planning and procrastination [on his part]. And, as [other c]ourt[s have] found in [other

cases], poor planning does not justify emergency relief." <u>Pure Aqua, Inc. v. Envitec Corp.</u>, No. SACV 12-1936, 2013 WL 12114610, at *1 (C.D. Cal. Oct. 25, 2013) (unpublished); <u>see also</u> <u>Baer</u>, 392 F. Supp. 2d at 49 (recognizing that, where the plaintiff failed to act in timely fashion, "any consequent time binds she faces are self-inflicted"). Based on that consideration and the availability at the conclusion of this litigation of both injunctive relief and damages to remedy any harm Plaintiff can prove Defendant caused by failing to provide reasonable accommodations due him, no basis exists for a "finding by the [C]ourt that [Plaintiff] would suffer irreparable damage or that []he has no adequate remedy at law in the event the [PI Motion] should be denied," <u>Alberti v. Cruise</u>, 383 F.2d 268, 272 (4th Cir. 1967). And the denial of the PI Motion for failure to show a likelihood of irreparable harm warrants denial of the Expedited Discovery Motion as well, because (as documented in the Introduction) the areas of inquiry proposed by Plaintiff for discovery in aid of the PI Motion focus on the merits of his underlying claims (not the existence of irreparable harm absent preliminary injunctive relief). (<u>See</u> Docket Entry 15 at 2.)

CONCLUSION

The findings of fact and conclusions of law in the preceding section establish that Plaintiff has failed to show a likelihood of irreparable harm absent entry of the preliminary injunctive relief he has requested. Nor would Plaintiff's proposed discovery alter

-33-

the analysis of irreparable harm.  Accordingly, Plaintiff cannot obtain preliminary injunctive relief or expedited discovery.

**IT IS THEREFORE ORDERED** that the PI Motion (Docket Entry 9) and the Expedited Discovery Motion (Docket Entry 14) are **DENIED.**

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 21, 2026